UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TIMOTHY J. MCILWAIN                                                    Plaintiff

v.                                              Civil Action No. 3:21-cv-406-RGJ

ALLEN P. DODD, III, ESQ.,                                           Defendants
ELIZABETH DODD, ESQ.,
ALLEN DODD, ESQ.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Alan P. Dodd, III, Esq., an individual, Elizabeth Dodd, Esq., an individual, and
Alan Dodd, Esq., an individual (collectively, "Defendants" or "Dodds"), move to dismiss Plaintiff
Timothy J. McIlwain's ("McIlwain's") claims against them.  [DE 9].  McIlwain responded [DE
18], and Defendants replied.  [DE 23].  In response, McIlwain moves to amend or correct his
Complaint.  [DE 24].  Before the Court are also McIlwain's Motion to Permit Electronic Filing
[DE 12] and Defendants' Motions for Leave to File Excess Pages in their Motion to Dismiss [DE
10], to Stay or Quash Subpoena [DE 14], and for Leave to File Excess Pages for Reply Brief in
Support of Motion to Dismiss [DE 22].  These matters are ripe.

For the reasons below, Defendants Motion to Dismiss [DE 9] is **GRANTED**, McIlwain's
Motion to Amend [DE 24], is **DENIED**, and McIlwain's Complaint [DE 1] is **DISMISSED**.
Defendants Motions for Leave to File Excess Pages [DE 10; DE 22] are **GRANTED** and
Defendants Motion to Stay or Quash Subpoena [DE 14] is **DENIED AS MOOT**.

## I.        BACKGROUND

McIlwain and Brooke Berry ("Brooke") are the parents of a minor child, H.D.M.  [DE 9-1
at 94; DE 24-2 at 282, 284].  When McIlwain and Brooke's personal relationship ended, Brooke

1

retained Elizabeth Dodd, an attorney at Dodd & Dodd attorneys, PLLC, to represent her in the resulting custody dispute. [DE 9-1 at 94, 96; DE 24-2 at 287]. McIlwain alleges that, before the custody dispute, he was raising H.D.M. with Brooke's mother, Leah Berry. [DE 24-2 at 284].

McIlwain alleges that, in February 2019, he was introduced to, and shared confidential information related to his custody dispute with, Allen P. Dodd, III, and Allen McKee Dodd, who are also attorneys at Dodd & Dodd.[1] [DE 9-1 at 96; DE 24-2 at 286-7].

In May 2019, Elizabeth Dodd, as Brooke's counsel, filed for a restraining order (domestic violence order or "DVO") against McIlwain, which she obtained. [DE 9-1 at 94; DE 9-2; DE 24 at 289]. On August 6, 2019, McIlwain's attorney took Brooke's deposition in the custody dispute, which McIlwain was not present for. [DE 9-1 at 95; DE 24-2 at 290]. After the deposition, McIlwain went to the courthouse to obtain a transcript. [DE 9-1 at 95; DE 24-2 at 290-91]. Elizabeth Dodd and Brooke were at the courthouse when McIlwain arrived. [9-1 at 95; DE 24-2 at 291]. McIlwain alleges that, upon his arrival, Elizabeth Dodd went to the Sheriff and "made multiple false statements." [DE 24-2 at 291]. The Sheriff arrested McIlwain for violating his DVO. [DE 9-1 at 95; DE 24-2 at 291]. The resultant criminal action against McIlwain was dismissed with prejudice. [DE 9-1 at 95; DE 24-2 at 292]. McIlwain agreed not to sue the County and stipulated to probable cause, excluding Elizabeth Dodd and Brooke. [DE 24-2 at 292].

McIlwain alleges that, because of Brooke and the Dodds' conduct and misrepresentations, he has been prevented from seeing his daughter, falsely arrested, and suffered monetary damages. [DE 24-2 at 292-96; 309].

---

[1] In his Complaint, McIlwain names the defendants as Alan P. Dodd, III, Esq., an individual, Elizabeth Dodd, Esq., an individual, and Alan Dodd, Esq, an individual. In their motion to dismiss, Defendants note that two defendants incorrectly named and are actually "Allen P. Dodd, III, Esq., an individual" and "Allen McKee Dodd, Esq, an individual."

2

McIlwain sued the Dodds, alleging Conspiracy in violation of § 1985(3), False Imprisonment, Malicious Prosecution, Abuse of Process, Fraud-Deceit, Negligent Misrepresentation, Negligent infliction of Emotional Distress, and Negligent Supervision and Training. [DE 1 at 32-44]. Defendants move to dismiss McIlwain's Complaint. [DE 9]. McIlwain responded [DE 18], and Defendants replied [DE 23]. Also in response, McIlwain moves to amend or correct his Complaint. [DE 24].

## II.    STANDARD

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988)). If the court grants a motion to amend, "the original pleading no longer performs any function in the case." *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "when the court grants leave to amend the complaint, a motion to dismiss the original complaint will be denied as moot if the amended complaint adequately addresses the grounds for dismissal." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *2 (W.D. Ky. Oct. 4, 2016).

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)). "In deciding whether to grant a motion to amend, courts should consider undue

3

delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  An action may be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

4

*Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).  Discussing the plausibility requirement in the context of claim of discrimination, the Sixth Circuit noted:

> [T]he Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims . . .[t]hus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. 1937, that [the defendant] "discriminate[d] against [the plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin.". . . According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (some internal citations omitted).

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.    DISCUSSION

Because McIlwain has moved to amend his Complaint, the Court first considers this motion.  *See Gallaher & Associates, Inc.*, 2010 WL 670078, at *1, *Brumbalough*, 427 F.3d at

1001.  *See also AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 943 (W.D. Tenn. 2010) (observing that the court must first consider whether amendment is futile, and if so, the pertinent cause of action in the original complaint cannot survive the motion to dismiss).  The parties do not assert undue delay, bad faith, or dilatory motive, and thus, the Court's analysis will be limited to futility and whether the defendants that McIlwain seeks to add lacked proper notice.  *See Brumbalough*, 427 F.3d at 1001.  Because the standard for futility mirrors the review applied in motions to dismiss, the Court will address McIlwain's amended allegations as if included in his original Complaint.  *See Saunders v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2015 WL 1980215, at *4 (W.D. Ky. May 1, 2015) (addressing plaintiff's amended allegations as if included in first complaint); *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'").

### 1. *Negligence Claims*

McIlwain's original Complaint includes three claims for negligence that he does not include in his Amended Complaint: Negligent Misrepresentation, Negligent Infliction of Emotional Distress, and Negligent Supervision and Training. [DE 1 at 41-44].  Defendants moved to dismiss these claims.  [DE 9-1 at 113-18].  McIlwain does not address them in his response beyond stating that he will be seeking leave to amend his complaint to replace his negligent infliction of emotional distress claim with an intentional infliction of emotional distress claim. [DE 18 at 231].  McIlwain includes no negligence claims in his proposed Amended Complaint. [DE 24].  As a result, the Court considers these claims abandoned and does not further consider them in its analysis.  *See Bazinski v. JPMorgan Chase Bank, Nat. Ass'n.*, 597 F. App'x 379, 380–

81 (6th Cir. 2015) (affirming dismissal where district court found several claims abandoned through plaintiff's failure to address them in response to motion to dismiss) *and Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) (quoting *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011), *report and recommendation adopted,* No. 06-CV-10961, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011)) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"). McIlwain's Negligent Misrepresentation, Negligent Infliction of Emotional Distress, and Negligent Supervision and Training Claims are **DISMISSED** as abandoned.

### 2. *Newly Named Defendants: Brooke Berry, Leah Berry, and John Doe Jefferson County Sheriffs 1-5*

In his Motion for Leave to Amend Complaint, McIlwain seeks to add Brooke Berry and Leah Berry (collectively, the "Berrys") as party defendants to many counts in his proposed Amended Complaint. [DE 24-2 at 281]. They are the only named defendants in Counts I, II, II, and IV. [*Id.* at 297-314]. McIlwain also seeks to add "John Doe Jefferson County Sheriffs 1-5" as defendants. [*Id.* at 281]. Yet, McIlwain does not name these John Doe defendants in any count. [*Id.* at 297-314].

Under the Federal Rules of Civil Procedure, there are four requirements for adding a defendant in an amendment: (1) the claim to be amended arose out of the same transaction or occurrence as the original complaint; (2) the party to be added received such notice that he will not be prejudiced in defending on the merits; (3) the party to be added knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him; and (4) the second and third requirements were satisfied within the period provided for service of the summons and complaint, 120 days. Fed. R. Civ. P. 15(c). Notice may

be actual or constructive. *Berndt v. State of Tenn.*, 796 F.2d 879, 884 (6th Cir. 1986). This is a "patently factual inquiry." *Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159 (E.D. Tenn. Feb. 6, 2013). A plaintiff's knowledge of a mistake or lack thereof is irrelevant under Rule 15(c)(1)(C); the rule is only concerned with whether "the newly named defendant knew or should have known that but for the plaintiff's mistake the action would have been brought against him." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, (2010) (citing Fed. R. Civ. P. 15(c)(1)(C)(ii)). "A defendant's actual knowledge of the complaint and constructive knowledge that the plaintiff made a mistake in failing to name him must occur within 120 days of the filing of the original complaint." *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (citing Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 15(c)).

While the claims arising against the Berrys may arise from the same transaction or occurrence as in the original complaint, the new defendants did not receive "such notice of the action that [they] will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). To date, nothing in the record suggests that the Berrys have received any notice, actual or constructive, of the lawsuit. There is further nothing to indicate, nor does McIlwain argue, that but for a mistake in identity, they would have been named parties. Finally, notice could not have occurred within 120 days, since McIlwain's initial complaint, filed "approximately five months" before the motion to amend, does not name Brooke or Leah Berry as parties, and based on the record, they have not received notice at any time. [DE 1; DE 24 at 277]. The Berrys have not received proper notice of the lawsuit under Fed. R. Civ. P. 15(c). *See, e.g.*, *DeBois v. Pickoff*, No. 3:09CV230, 2011 WL 1233665, at *8–10 (S.D. Ohio Mar. 28, 2011) (finding that, where the claim arose from the same transaction or occurrence, but the defendants to be added had not been served with process, were not parties, and had no reason to know they would likely be named, the

defendants had not received notice and could not be added under Rule 15(c)).  Thus, McIlwain may not add Brooke or Leah Berry as a defendant.

As for the John Doe defendants, the Court cannot analyze whether the claim arose out of the same transaction or occurrence as the original complaint, as McIlwain names them in caption only, and does not name them in any claim.  Even if McIlwain named the John Doe defendants in each claim enumerated in his amended complaint, there is nothing on the record to indicate that any John Doe Jefferson County Sherriff received any notice of the lawsuit.  There is also no indication or argument that such defendants knew or should have known that McIlwain meant to bring the lawsuit against them but for a mistake in identity.  Because neither notice nor knowledge has occurred to this point in time, neither could occur 120 days of the filing of the original complaint, as the motion to amend was filed five months after the compliant.  [DE 1; DE 24 at 277].  Based on the record, McIlwain has not met Fed. R. Civ. P. 15(c) requirements for adding John Doe Jefferson County Sheriffs 1-5 as defendants.  *See, e.g.*, *DeBois*, 2011 WL 1233665, at *10.

Thus, the Court **DENIES** McIlwain's motion for leave to amend his complaint to include any claim against Brooke Berry, Leah Berry, or John Doe Jefferson County Sheriffs 1-5.

### 3.  *Private Conspiracy to Violate Civil Rights U.S.C. § 1985(3)*

McIlwain alleges that "[t]he actions taken by the [Dodds and Brooke Berry] constitutes an agreement to violate the due process rights of [Plaintiff and his daughter] from the warm, loving, close, familial relationship that they both enjoyed. . . [and] to be free from unlawful arrest and incarceration."  [DE 24-2 at 304].  He incorporates by reference his factual allegations and further alleges that Defendant Elizabeth Dodd "file[d] baseless and knowingly false applications to improperly block the Plaintiff from his daughter completely."  [*Id.* at 305].

9

In their motion to dismiss, Defendants argue that this claim should be dismissed because it is time-barred and because plaintiff has not alleged Defendants' conduct was motivated by racial or other class-based discriminatory animus.  [DE 9-1 at 105]. [2]

  i. *Statute of Limitations*

Defendants argue that the statute of limitations has tolled on McIlwain's claims because the statute of limitations on a § 1985 claim is one year and the "last overt act alleged in Plaintiff's Complaint occurred on August 9, 2019, when Elizabeth Dodd allegedly told the judge's secretary that Plaintiff consented to a lack of visitation until the pending EPO was tried."  [DE 9-1 at 106].  McIlwain does not directly respond to this argument but argues in his response to Defendants' motion to dismiss that the appropriate accrual date on all his claims is the dismissal of the criminal charges against him, May 26, 2021.  [DE 18 at 229].  He also argues that the five-year statute of limitations found in KRS § 14.120(6) applies to his case.  [*Id.* at 230].

Section 1985 contains no statute of limitations period, so federal courts must look to state law for the statute of limitations under those sections.  *Burnett v. Grattan*, 468 U.S. 42, 49, (1984), *holding modified by Wilson v. Garcia*, 471 U.S. 261 (1985).  Conspiracy claims brought in Kentucky under § 1985 are thus limited to the one-year statute of limitations found in KRS §

---

[2] Defendants also argue that this claim is barred by the intracorporate conspiracy doctrine – that the Dodds are part of a corporation that cannot conspire with itself.  [DE 9-1 at 105-07].  While the intracorporate conspiracy doctrine applies in the Sixth Circuit to conspiracy claims under § 1985(3), this argument fails because, although she is not part of the lawsuit, McIlwain argues that Brooke Berry is part of the conspiracy. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991); [DE 18 at 239].  Because Berry is a second person or entity not part of the Dodds' corporation, the intracorporate conspiracy doctrine is inapplicable.  *See, e.g.*, *Hull*, 926 F.2d at 510 *and Williams v. Ohio Dep't of Com.*, No. 2:08-CV-0178, 2009 WL 982923, at *4 (S.D. Ohio Apr. 13, 2009).

413.140(1).[3]  *See Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 272 (6th Cir. 2001)

(stating that "the applicable statute of limitations for any claim arising [in Kentucky] under either

Section 1983 or 1985(3) is one year" and citing KRS § 413.140(a) and (c)).  Federal law controls

when the cause of action accrues, however, and the "claim for relief accrues when the plaintiff

knows or has reason to know of the injury that is the basis of his action."  *Bowden*, 13 F. App'x at

273; *Friedman v. Est. of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).  "A plaintiff has reason to

know of his injury when he should have discovered it through the exercise of reasonable

diligence."  *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).  In a continuing conspiracy, the

"last overt act doctrine" provides guidance: accrual occurs on the date of the last overt act by

defendants that caused injury to the plaintiff.  *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d

234, 237 (9th Cir. 1987).

The date that the criminal charges against McIlwain were dismissed, May 6, 2021, is not

the correct date for calculating the accrual of the claim, because the dismissal of the criminal

charges was not an act by defendants that caused injury to McIlwain.  *See Wallace v. Kato*, 549

U.S. 384, 391 (2007) (discussing accrual and holding that, in the context of a § 1983 claim for

false arrest, accrual occurs at the time of detainment rather than setting aside of conviction).  Even

if McIlwain alleged that he suffered injury as a result of the dismissal of criminal charges, it was

not an act by the defendants, as the government dismissed the criminal charges.  Thus, the

appropriate accrual date cannot be the dismissal of McIlwain's criminal action.  Defendants argue

that the "last overt act alleged in Plaintiff's Complaint occurred on August 9, 2019, when Elizabeth

---

[3] KRS 413.140(1) provides:

> The following actions shall be commenced within one (1) year after the cause of action accrued: (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice, or servant; . . . (c) An action for malicious prosecution, conspiracy, arrest, seduction, criminal conversation, or breach of promise of marriage.

Dodd allegedly told the judge's secretary that Plaintiff consented to a lack of visitation until the pending EPO was tried."  [DE 9-1 at 106].  In the Court's review of the pleadings, the latest date related to the alleged conspiracy that the Court identified in either the complaint or the amended complaint is "on or around September/October 2019, [when] Defendant Elizabeth Dodd and B.M. began sending the child to a handpicked New York therapist to get evidence to block the child from the father permanently."  [DE 1 at 31].  McIlwain filed this action on June 22, 2021.  [DE 1]. June 2021 is more than one year after September or October 2019.  McIlwain's § 1985(3) Conspiracy claim is therefore barred by the one-year statute of limitations.

### ii.      § 1985(3) Conspiracy Protected Class and Discriminatory Animus

Defendants argue that McIlwain's § 1985(3) Conspiracy claim fails on the merits regardless of the statute of limitations because McIlwain is not a member of a protected class and because he does not allege a discriminatory animus.  [DE 9-1 at 105-07].  McIlwain argues that he was discriminated against as a member of the protected class of single fathers.  [DE 18 at 238].

42 U.S.C. § 1985 provides a civil cause of action to individuals deprived by a private conspiracy of the right to "the equal protection of the laws, or of equal privileges and immunities under the laws."  *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 376 (1979) (quoting 42 U.S.C. § 1985(3)).  There are four elements a plaintiff must prove to state a cause of action under a claim of § 1985(3) private conspiracy:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  "[T]o sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and

discrimination on account of it." *Est. of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) *accord Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (holding that, to recover under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). A plaintiff must plead "specific allegations showing the existence of a conspiracy. General and conclusory allegations of conspiracy are not enough." *Azar v. Conley*, 456 F.2d 1382, 1385 (6th Cir. 1972).

"A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (quoting *Hicks v. Resol. Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992)). The Sixth Circuit has held that there is no cause of action under § 1985(3) when the plaintiff alleges no facts asserting that the defendants' actions were motivated by class-based discriminatory animus. *See, e.g.*, *Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013); *see also Brown v. Walsh*, No. 12-10535, 2013 WL 173025 (E.D. Mich. Jan. 16, 2013), *Clark v. Caruso*, No. 09-CV-10300, 2010 WL 746417 (E.D. Mich. Mar. 2, 2010), *and Wilson v. Kentucky*, No. 1:07CV-142-R, 2008 WL 4191484 (W.D. Ky. Sept. 10, 2008).

McIlwain alleges that "[t]he actions taken by the [Dodds and Brooke Berry] constitutes an agreement to violate [his] due process rights. . . [and] to be free from unlawful arrest and incarceration." [DE 24-2 at 304]. Neither McIlwain's original Complaint nor his Amended Complaint mention a class of persons or discriminatory animus. [DE 1 at 32-36; DE 24-2 at 303-8]. In his response to Defendants' motion to dismiss, McIlwain argues that, under § 1985, class-based animus is not required to prove conspiracy, but that if it were, he would qualify as a single father. [DE 18 at 238]. To successfully state a claim under § 1985(3), McIlwain must prove that

he is a member of a protected class and that he was discrimination against because of his class. *Estate of Smithers ex rel. Norris*, 602 F.3d at 765.

The class of 'single fathers' is not within any recognized constitutionally protected class.[4] Furthermore, the class of 'single fathers' does not "possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc.*, 32 F.3d at 994; *see Ysais v. Richardson*, No. CIV 07-287 JB/RLP, 2008 WL 2230720, at *3 (D.N.M. Mar. 24, 2008) (dismissing plaintiff's § 1985(3) claim because single father was not a protected class), *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1262 (E.D. Wash. 2013) ("Unwed biological fathers have never been recognized as a protected class under § 1985"), *Borlawsky v. Town of Windham*, 115 F. Supp. 2d 27, 29 (D. Me. 2000) (dismissing plaintiff's § 1985(3) claim on summary judgment because "divorced or otherwise single women parents" are not a protected class), *Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206, 1211 (D. Or. 2001) (finding that plaintiff failed to allege membership of a protected class under § 1985 when alleging discrimination based on "divorced fathers seeking custody"), *and Humphrey v. Ct. of Common Pleas of York Cty., Pa.*, 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) (finding that a "class consisting of divorcing fathers, divorced fathers or fathers engaged in custody disputes" was not a protected class under § 1985(3)). McIlwain therefore cannot receive protection under § 1985(3) as a member of the class of 'single fathers.' "Plaintiff's apparent inability to allege membership in a protected class appears to be a wholly sufficient, independent basis upon which to dismiss his equal protection claim with prejudice." *Altman v. King*, No. 13-10614, 2014 WL 585331, at *3 (E.D. Mich. Feb. 14, 2014),

---

[4] In support of his argument that the Supreme Court has recognized single fathers as a class worthy of protection under the 14th amendment, McIlwain cites *Meyer v. Nebraska*, 262 U.S. 390 (1923), *Troxel v. Granville*, 530 U.S. 57 (2000), and *Stanley v. Illinois*, 405 U.S. 645 (1972). [DE 18 at 238-39]. These landmark cases establish the rights of parents under the constitution and the due process clause, but do not establish single fathers as a protected class.

14

*aff'd* (Sept. 30, 2014); *see also Azar*, 456 F.2d at 1384 *and Brooks v. Am. Broad. Companies, Inc.*, 932 F.2d 495, 499 (6th Cir. 1991).

Even if 'single fathers' were a constitutionally protected class, McIlwain has not alleged facts suggesting that any of Defendants' actions were motivated by a class-based discriminatory animus; McIlwain makes only conclusory allegations, and his conspiracy claim is therefore also barred on this basis. *See United States v. Velazquez-Armas*, 335 F. App'x 912, 913 (11th Cir. 2009) (Where no facts were presented to show motivation to discriminate, plaintiff's § 1985(3) claim was properly dismissed); *Anthony v. Ranger*, No. 08-CV-11436-DT, 2010 WL 1268031, at *13 (E.D. Mich. Mar. 30, 2010) (§ 1985(3) claim dismissed where court found that "[p]laintiff sets forth no plausible facts showing that the alleged conspiracy was motivated by racial or other class based animus, other than stating that Plaintiff is black"); *Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 876 (W.D. Mich. 2009) (dismissing § 1985 claim where "[plaintiff] has neither shown the existence of a conspiracy nor alleged any fact suggesting that the conduct she complains of was motivated by racial or any other class-based animus").

McIlwain's claim for § 1985(3) conspiracy is time-barred.   Further, nether the Complaint nor the Amended Complaint contain any plausible facts showing that McIlwain falls within a protected class or that the alleged conspiracy was motivated by class-based discriminatory animus. As a result, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to

amend as to this claim.  Defendants' Motion to Dismiss the § 1985(3) claim in McIlwain's original Complaint is **GRANTED**.[5]

### 4.  False Imprisonment

McIlwain alleges that "Defendant Elizabeth Dodd lacked the authority to restrain Plaintiff . . . therefore, she gave false statements to the Sheriff to restrain plaintiff unlawfully . . . Plaintiff was falsely arrested . . . and involuntarily restrained by the Louisville Sherriff and placed in handcuffs" and "committed to the custody of the Commissioner of the Department of Corrections for a term of one day."  [DE 24-2 at 308-09].

Defendants argue that McIlwain's claim for False Imprisonment fails because it is untimely.  [DE 9-1 at 108].  McIlwain broadly responds that the appropriate date of accrual is the date of the dismissal of his criminal action on May 26, 2021 and that the appropriate statutory provision is the five-year statute of limitations provided under KRS 14.120(6).  [DE 18 at 230, 230-31].

Under Kentucky Law, claims for false imprisonment must be brought within one year of termination of imprisonment under KRS § 413.140(1).  *Dunn v. Felty*, 226 S.W.3d 68, 70 (Ky.

---

[5] With the dismissal of this claim, the Court considered its jurisdiction over the remaining state law claims. McIlwain sued in federal court under diversity and federal question jurisdiction.  [DE 1 at 1-2].  While McIlwain asserts that he is a resident of New Jersey, he has also alleged facts suggesting that he is a resident of Kentucky.  [*Id.* at 2, 4, 22].  While the Court questions its diversity jurisdiction, in the absence of such it could exercise supplemental jurisdiction over the remaining claims.

The Court also considered Defendants' argument that this Court lacked jurisdiction under the Rooker-Feldman doctrine.  [DE 9-1 at 101-05].  The Rooker–Feldman doctrine would preclude this Court from "hear[ing] claims that were actually litigated" or "inextricably intertwined" with adjudication by a state's courts.  *Patmon v. Michigan Supreme Ct.*, 224 F.3d 504, 510 (6th Cir. 2000); *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000).  Claims are "inextricably intertwined" where "federal relief can only be predicated upon a conviction that the state court was wrong."  *Parkview Associates Partnership*, 225 F.3d at 325.  However, McIlwain is neither attempting to appeal a state court decision, nor is his relief entirely predicated upon this Court "determining that the state court was incorrect in its handling of the custody dispute."  [DE 9-1 at 103].  The Rooker-Feldman doctrine thus does not preclude this Court from hearing the claims.

2007).  McIlwain was arrested on August 6, 2019 and released on August 9, 2019.  [DE 24-2 at 309].  He filed this action on June 22, 2021.  [DE 1].  June 2021 is more than one year after August 2019.  McIlwain's claim is barred by the statute of limitations.

McIlwain cannot sustain a claim for false imprisonment regardless of the statute of limitations.   An action for false imprisonment under Kentucky Law only exists when the imprisonment was without legal authority.  *Smith v. Stokes*, 54 S.W.3d 565, 567 (Ky. App. 2001) (quoting *SuperX Drugs of Kentucky, Inc. v. Rice*, 554 S.W.2d 903 (Ky. Ct. App. 1977)); *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 783 (W.D. Ky. 2003); *Taylor v. Univ. Med. Ctr., Inc.*, No. CIV.A. 3:03CV-502-H, 2005 WL 1026190, at *2 (W.D. Ky. Apr. 26, 2005).  The Louisville Sherriff, as an officer of law, had legal authority to arrest McIlwain, and the Department of Corrections had legal authority to imprison McIlwain.  *See SuperX Drugs of Kentucky, Inc.*, 554 S.W.2d 903. Because McIlwain was held by those with legal authority, he cannot maintain a cause of action for False Imprisonment under Kentucky Law.  *Stokes,* 54 S.W.3d at 567.

McIlwain's False Imprisonment claim is time-barred and separately barred because his imprisonment was with legal authority.   Thus, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to amend as to this claim.  Defendants' Motion to Dismiss the False Imprisonment claim in McIlwain's original Complaint is **GRANTED**.

*5.  Malicious Prosecution*

McIlwain alleges that Elizabeth Dodd's "false statement . . . caused the sheriff to intentional restraint or willful detain or interference [sic] with plaintiff's liberty or freedom contrary to his will or without authority of law."  [DE 24-2 at 310].  McIlwain states that his arrest on August 6, 2019 was "for violation of a DVO" and that the charges were dismissed.  [*Id.*].  He

states that "[a]s part of the agreement to dismiss the charges against the Plaintiff, the stipulation of probable cause specifically excluded Defendants Elizabeth Dodd and Berry."  [*Id.* at 292].

Defendants argue that McIlwain's malicious prosecution claim fails because he stipulated to the probable cause in the underlying criminal suit, there was no improper purpose, and because the proceedings did not terminate in his favor.  [DE 9-1 at 108-11].  McIlwain does not directly respond to any of these arguments.

In Kentucky, "[a] malicious prosecution action may be established" where five separate elements are shown:

> (1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016), *as corrected* (Sept. 22, 2016).

In the context of malicious prosecution, "procuring a criminal proceeding" means "being the proximate and efficient cause of putting the law in motion against another person."  *Martin*, 507 S.W.3d at 12.  Taking the facts in a light most favorable to McIlwain, Elizabeth Dodd procured a criminal proceeding against McIlwain by making statements to the Sherriff about the violation of his DVO, satisfying the first element.  *Id.;* [DE 24-2 at 308-09].

"Probable cause is that which 'would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime charged.'"  *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (quoting *Louisville & N. R. Co. v. Sharp*, 282 Ky. 758 (1940)).  Defendants argue that there was probable cause here, because McIlwain stipulated to it when his criminal charges

were dismissed.  [DE 9-1 at 108].  McIlwain appears to assert that Defendant Elizabeth Dodd lacked probable cause to procure a criminal proceeding against him, because "the stipulation of probable cause specifically excluded" her.  [DE 24-2 at 292].  A limited stipulation of probable cause can preserve a state-law claim of malicious prosecution.  *See Shemwell v. Heller*, No. 3:10-CV-336-CRS, 2012 WL 1038114 (W.D. Ky. Mar. 27, 2012).  However, "stipulating to probable cause in exchange for dismissal is in fact the overarching purpose of such stipulations, at least from the accused's point of view."  *Jenkins v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:17-CV-151-DJH, 2018 WL 345119, at *6 (W.D. Ky. Jan. 9, 2018).  *See Broaddus v. Campbell*, 911 S.W.2d 281, 284 (Ky. Ct. App. 1995) (construing a stipulation of probable cause as a compromise dismissal).

Even if the stipulation were sufficiently limited to avoid serving as probable cause, Elizabeth Dodd had probable cause to procure a criminal proceeding.  Courts look at "the facts and circumstances" to determine whether probable cause existed.  *Williams v. Com.*, 147 S.W.3d 1, 12 (Ky. 2004) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).  If the facts, when viewed in a light most favorable to McIlwain, show that there was a "fair probability" that the defendant committed or intended to commit a crime, then probable cause existed.  *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001).  McIlwain states that his arrest on August 6, 2019 was "for violation of a DVO."  [DE 24-2 at 310].  He also states that "Elizabeth Dodd and Brooke [Berry] went to the courthouse . . . . When Plaintiff arrived at the Courthouse, Defendant Elizabeth Dodd and her client immediately ran to get the Sherriff."  [*Id.* at 291].  McIlwain asserts that Elizabeth Dodd and Brooke berry "were lying in wait . . . in order to fabricate a DVO violation."  [*Id.*  at 292].  From this the Court can infer that McIlwain and Brooke Berry were in the courthouse when Elizabeth Dodd made statements to the Sheriff that McIlwain violated his DVO.  The DVO Order against

McIlwain required him to remain at least 500 feet away from Brooke Berry.  [DE 9-2].[6]  Regardless of her intent or malice in having her client at the courthouse, Elizabeth Dodd had probable cause to procure a criminal proceeding, because she would have reason to believe that the DVO was violated; that is, Elizabeth Dodd had probable cause to believe that McIlwain was within 500 feet of Brooke Berry.  *See Byrd v. Bryant*, 490 F. Supp. 3d 1202, 1213 (E.D. Ky. 2020) (finding probable cause when defendant had reason to believe a crime had been committed).  Because "sufficient undisputed facts show probable cause," the Court finds that probable cause existed.  *See Reid v. True*, 302 S.W.2d 846, 848 (Ky. 1957).   "If there be probable cause, [even] though the charge or claim be false, and therefore unjust or wrongful, the most express malice will not be sufficient." *Bannon v. McDonald*, 270 Ky. 364, 366 (1937).  Therefore, because malice in having Berry at the courthouse is irrelevant, and because malice is a question of fact, the Court will not consider it here.  *See Mosier v. McFarland*, 269 Ky. 214, 217 (1937).

Additionally, "[a] malicious prosecution plaintiff has the burden of proving that the underlying criminal proceedings terminated in a manner that is inconsistent with guilt." *Anderson v. N. Marshall Water Dist.*, No. 2015-CA-001953-MR, 2018 WL 2173813, at *15 (Ky. Ct. App. May 11, 2018); *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988).  When a malicious prosecution plaintiff compromises, such as by stipulating to probable cause in exchange for a dismissal of charges, the question of his guilt or innocence is left open, and he cannot maintain a malicious prosecution suit. *Anderson*, 2018 WL 2173813, at *16; *Broaddus*, 911 S.W.2d at 284. When the charges against him were dismissed, McIlwain agreed not to sue the County and stipulated to probable cause.  [DE 24-2 at 292].  This compromise leaves the question of his guilt

---

[6] The DVO is referred to in the original complaint and attached to Defendants' motion to dismiss, so the Court may properly consider it. *Bassett*, 528 F.3d at 430.

or innocence open, and the proceeding thus did not terminate in his favor. *Anderson*, 2018 WL 2173813, at *16; *Broaddus*, 911 S.W.2d at 284

McIlwain's Malicious Prosecution claim cannot survive because the undisputed facts demonstrate that probable cause existed and alternatively because the proceeding did not terminate in his favor. Thus, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to amend as to this claim. Defendants' Motion to Dismiss the Malicious Prosecution claim in McIlwain's original Complaint is **GRANTED**.

   *6. Abuse of Process*

McIlwain alleges that Defendant Elizabeth Dodd abused the legal process "by filing a complaint for violation of a DVO with the Louisville Sheriff Department and falsely accused plaintiff of violating a restraining order." [DE 24-2 at 312]. He asserts that she "had an ulterior motive in misusing the legal process because she filed the EPO and sole custody to force an extremely unfavorable visitation agreement upon the Plaintiff." [*Id.*]. Defendant asserts that McIlwain's Abuse of Process claim fails because it is untimely, as the statute of limitations is one year, and the cause of action accrues at the time of wrongful conduct. [DE 9-1 at 111-12]. McIlwain broadly argues that the appropriate accrual date is the dismissal of his criminal action, May 26, 2021, and that the appropriate statutory provision is KRS 14.120(6), which provides for a five-year statute of limitations. [DE 18 at 229-31].

The statute of limitations on abuse of process claims in Kentucky is one year under KRS 413.140(1). *Maqablh v. Heinz*, No. 3:16-CV-289-JHM, 2016 WL 7192124, at *8 (W.D. Ky. Dec. 12, 2016). Such claims are "generally held to accrue . . . from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Dickerson v. City of Hickman*, No. 5:08CV-P53-R, 2010 WL 816684, at *5 (W.D. Ky.

Mar. 4, 2010).  The date of the conduct that McIlwain complains of, "filing a complaint for violation of a DVO with the Louisville Sheriff Department and falsely accused plaintiff of violating a restraining order," occurred on August  6, 2019.  [DE 24-2 at 308-09, 312].  McIlwain filed this action on June 22, 2021.  [DE 1].  August 2019 is more than one year before June 2021. For that reason, McIlwain's abuse of process claim is time-barred.

Regardless of the statute of limitations, McIlwain's abuse of process claim is barred because he cannot prove the essential elements of his claim under Kentucky Law.  A defendant is liable for abuse of process where he or she used "a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed." *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010) (citing Restatement (Second) of Torts § 682 (1977)).  Under Kentucky law, there are two essential elements of the claim: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 765 (Ky. Ct. App. 1980) (citing W. Prosser, Handbook of the Law of Torts, § 121 (4th ed. 1978)).  Both elements must be present, as "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if we assume arguendo bad intentions." *Simpson v. Laytart*, 962 S.W.2d 392, 395 (Ky. 1998).  In essence, abuse of process involves "a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself." *Simpson*, 962 S.W.2d at 395.

Taking the facts in a light most favorable to McIlwain, there are no facts to suggest that Elizabeth Dodd abused the legal process.  Even if she had bad motives and made false representations, Dodd is not liable for abuse of process because she did not use the process for some purpose outside the criminal process. *See Simpson*, 962 S.W.2d at 395; *Mullins v. Richards*,

705 S.W.2d 951, 952 (Ky. Ct. App. 1986).  Defendant Elizabeth Dodd did not, for example, "use the threat of arrest to secure a monetary, proprietary, or other benefit from [Plaintiff], nor did [s]he offer to . . . refrain from filing charges in return for a benefit." *Grise v. Allen*, No. 5:11-195-KKC, 2016 WL 1261077, at *9 (E.D. Ky. Mar. 30, 2016), *aff'd,* 714 F. App'x 489 (6th Cir. 2017).  Because there is no evidence that Dodd used the process for anything but the "formal use of the process itself," McIlwain's abuse of process claim must fail. *Simpson*, 962 S.W.2d at 395.

McIlwain's abuse of process claim is untimely and fails because Dodd did not use process for anything outside the criminal process.  Thus, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to amend as to this claim.  Defendants' Motion to Dismiss the Abuse of Process claim in McIlwain's original Complaint is **GRANTED**.

### 7.  Fraud-Deceit

McIlwain alleges that "Defendant Elizabeth Dodd made oral representations and promises to various governmental entities . . . that Plaintiff violated a restraining order . . . governmental entities [] relied on these false statements . . . . Plaintiff did not violate a retaining [sic] order." [DE 24-2 at 312].  Defendant argues that this claim fails because the attorney-litigation privilege applies and because McIlwain did not rely on her statements.  [DE 9-1 at 112].  McIlwain argues in response that the attorney-litigation privilege is inapplicable.  [DE 18 at 232-34].

Under Kentucky law, a fraud claim requires six elements: (1) the defendant made a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted on by the plaintiff, (5) plaintiff acted in reliance upon it, and (6) causing injury to plaintiff.  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)).

McIlwain alleges that Defendant Elizabeth Dodd falsely represented to various governmental agencies that he had violated a restraining order, and that the governmental agencies relied on these misrepresentations.  [DE 24-2 at 312].  Taking these allegations as true, McIlwain is not alleging that he relied on any misrepresentation by the defendants.  As a result, he cannot maintain a cause of action for Fraud under Kentucky Law.  *See First Cap. Bank of Kentucky v. Hammann*, No. 3:08CV-646-H, 2010 WL 2228282, at *3 (W.D. Ky. June 2, 2010) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003)).

McIlwain cannot maintain his fraud claim because he did not rely on any of Dodd's representations.[7]  Thus, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to amend as to this claim.  Defendants' Motion to Dismiss the Fraud-Deceit claim in McIlwain's original Complaint is **GRANTED**.

### 8.  Intentional Infliction of Emotional Distress

McIlwain alleges that the Dodds' "intentional and/or reckless acts in fabricating violations of domestic restraining orders and falsely accusing plaintiff of child abuse, as previously alleged, were outrageous and intolerable, and offends generally accepted cstandards [sic] of decency and morality."  [DE 24-2 at 313].

The Kentucky Supreme Court has adopted the Restatement (Second) of Torts definition of Intentional Infliction of Emotional Distress ("IIED"): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to others results from it, for such bodily harm. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (quoting Restatement (Second) of Torts § 46)).  To

---

[7] The Court does not address the argument about attorney-litigation privilege, as it is unnecessary to the Court's decision.  The same is true of Defendants' broad argument that McIlwain's claims fail because they are disguised legal malpractice.  [DE 9-1 at 96-101].

recover for IIED, a plaintiff must establish: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the distress suffered must be severe. *Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).  For IIED, the wrongdoer's conduct can be "intentional" or "reckless."  *Osborne*, 31 S.W.3d at 913.  But liability may be found only where the conduct "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community."  *Craft*, 671 S.W.2d at 250; *accord Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990).

McIlwain alleges that Defendants' intentional or reckless acts were "fabricating violations of domestic restraining orders and falsely accusing plaintiff of child abuse."  [DE 24-2 at 313].  Viewing the facts in the light most favorable to McIlwain, neither these acts nor any listed in the complaint rise to the level of outrageous conduct.  *See* Restatement (Second) of Torts § 46 (listing examples of actionable conduct), *Brown v. Lexington-Fayette Urb. Cty. Gov't Dep't of Pub. Works*, No. CIV. A. 08-500-JMH, 2010 WL 1529410 (E.D. Ky. Apr. 15, 2010), *aff'd sub nom. Brown v. Lexington-Fayette Urb. Cty. Gov't*, 483 F. App'x 221 (6th Cir. 2012) (declining to find that a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably, or "beyond all decency"), *and Humana of Kentucky, Inc.*, 796 S.W.2d at 2–4 (affirming summary judgment for the defendant on the outrage claim where nurses told the grieving mother of a stillborn baby to "shut up" and that the hospital would take care of disposing of the dead baby). Nor has McIlwain shown that these actions were taken with the sole intent to cause extreme emotional distress to him. *See Michals v. William T. Watkins Mem'l United Methodist Church*, 873 S.W.2d 216, 220 (Ky. Ct. App. 1994) (holding that the plaintiffs failed to

prove an intentional infliction of emotional distress claim where there was no evidence the defendant intended to cause extreme emotional distress).

McIlwain's IIED claim cannot survive because Defendants' actions were not extreme or outrageous. Thus, the Court finds that amendment is futile and **DENIES** McIlwain's motion for leave to amend as to this claim.

## CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss [DE 9] is **GRANTED;**

(2) Defendants' Motion for Leave to File Excess Pages regarding Motion to Dismiss [DE 10] is **GRANTED**;

(3) McIlwain's Motion to Permit Electronic Filing [DE 12] is **DENIED AS MOOT**;

(4) Defendants' Motion to Stay or Quash Subpoena [DE 14] is **DENIED AS MOOT**;

(5) Defendants' Motion for Leave to File Excess Pages for Reply Brief in Support of Motion to Dismiss [DE 22] is **GRANTED;**

(6) McIlwain's Motion Amend/Correct Complaint [DE 24] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

February 16, 2022

Cc:   Plaintiff, pro se

Counsel of record

26